UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DONNA WEISS,

                Plaintiff,

        -against-

COUNTY OF SUFFOLK and SUFFOLK COUNTY
DEPARTMENT OF PARKS RECREATION &
CONSERVATION,

                Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
14-CV-00904 (LDH) (SIL)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

       Plaintiff Donna Weiss brings this action against Defendants County of Suffolk and Suffolk County Department of Parks Recreation & Conservation ("Parks and Recreation") alleging a violation of the Americans with Disabilities Act (the "ADA"). Specifically, Plaintiff alleges that Defendants failed to reasonably accommodate her mental disability and that she was unlawfully terminated. Plaintiff moves, pursuant to Federal Rule of Civil Procedure 56, and Defendants cross-move for summary judgment to dismiss the action in its entirety.[1]

## BACKGROUND

       Plaintiff was employed by Defendant Parks and Recreation as a clerk typist in its environmental department from March 1996 to June 3, 2011. (Defs.' Opp'n 56.1 Statement ¶ 7, ECF No. 54-19.) Initially, Plaintiff worked at Defendants' West Sayville location where she shared an office space with two other individuals. (Pl.'s Opp'n 56.1 Statement ¶ 14, ECF No. 55-1.) While at the West Sayville location, Plaintiff did not have any medical issues that affected her ability to do her job. (*Id.* ¶ 8.)

---

[1] Plaintiff moves for partial summary judgment.

1

At some point in either 2009 or 2010, (the record is unclear on this point), the environmental department was relocated from Defendants' West Sayville location to the Timber Point location. (*Id.* ¶ 15; Weiss Deposition 14:17–18, ECF No. 53-2.) Plaintiff's first office space at the Timber Point location was "a large open area with only two desks." (Pl.'s Opp'n 56.1 Statement ¶ 16.) Her desk was set against a window and faced a larger window, which provided a view of the golf course. (*Id.* ¶ 17.) She shared the office space with one other individual. (*Id.* ¶ 18.)

In a March 22, 2011 memorandum, Tracy Bellone, Defendant Park and Recreation's Deputy Commissioner, advised Plaintiff that her work assignment would be changed and that she would be moved to another office within the Timber Point location. (Defs.' Opp'n 56.1 Statement ¶ 16; Pl.'s Opp'n 56.1 Statement ¶ 20; Barraga Declaration Ex. I., ECF No. 54-9.) Her new office measured 15.5 feet x 8 feet. (Pl.'s Opp'n 56.1 Statement ¶ 21.) The office was windowless and had three doors that opened to interior spaces—two doors opened to other offices; one door opened to the hallway. (*Id.* ¶¶ 43, 45–47.)

On March 24, 2011, two days after receiving notice of the impending relocation, Plaintiff sent a letter to the Department of Public Works Commissioner requesting a transfer to the Department of Public Works. (Defs.' Opp'n 56.1 Statement ¶ 28.) According to Plaintiff, she made the request because of her inability to work in her current space. (*Id.*) Then, on March 28, 2011, she met with Ms. Bellone, and informed Ms. Bellone that claustrophobia prevented her from working in the new office because it was a confined space without a window, air conditioning, or ventilation. (*Id.* ¶ 23.) Plaintiff requested that she either be moved to an office with a window or have a window installed in the office. (*Id.* ¶ 24.) During the meeting, Ms. Bellone asked whether Plaintiff had medical documentation of her claustrophobia. (Pl.'s Opp'n

56.1 Statement ¶ 56.) Plaintiff indicated that she did not. (*Id.* ¶ 24.) Ms. Bellone asked that such documentation be provided and told Plaintiff that a window would be put in after Labor Day. (*Id.* ¶¶ 55, 58.)

No sooner than March 30, 2011, Plaintiff met with Registered Clinical Social Worker, Barbara Weitz. (*Id.* ¶¶ 64, 66; Weiss Affirmation, Ex. E, ECF No. 53-4.) Ms. Weitz provided Plaintiff with a note stating:

> Donna Weiss has been a patient of mine since 3/30/11. She has a diagnosis of Agoraphobia with Panic Disorder (300.21). She will be seen weekly. This disorder is represented by extreme anxiety or panic attacks when these patients are faced with a feeling of confinement, *i.e.*, small spaces, being in a crowd, being on a bridge or [in a] tunnel or on a train, etc. If you need additional information regarding the patient please feel free to call me at the above number.

(Weiss Affirmation, Ex. E.)

According to Plaintiff, Defendants made some efforts to accommodate her concerns. Within two days of Plaintiff's meeting with Ms. Bellone, the doors were removed from Plaintiff's office. (Pl.'s Opp'n 56.1 Statement ¶ 60.) Her supervisors, Nick Gibbons and Tom D'Angelo permitted Plaintiff to work in their respective offices when either was not present. (*Id.* ¶¶ 73–74, 99.) Jim Barr, whose office was adjacent to Plaintiff, left his door open when he was not in the office to "help [Plaintiff] feel better." (*Id.* ¶ 95.) According to Plaintiff, these accommodations did not alleviate her panic attacks. Indeed, she testified that she was having panic and anxiety attacks every day. (Defs.' Opp'n 56.1 Statement ¶¶ 22, 30.) Further, Plaintiff maintains that she had difficulty breathing in her office and that following an attack she was unable to concentrate for the rest of the day. (Pl.'s Opp'n 56.1 Statement ¶ 81; Weiss Deposition 33:25–34:4.) Due to these attacks, Plaintiff used sick days and left work early on occasion. (Weiss Deposition 37:10–11.)

On May 23, 2011, Plaintiff made a second request for a transfer. (Defs.' Opp'n 56.1 Statement ¶ 29.) This time, she wrote a letter requesting a transfer to the Department of Social Services. (*Id.*) According to Plaintiff, she was still suffering from her medical condition at the time of the letter. (*Id.*)

By the end of Plaintiff's employment, she was having daily panic attacks and speaking with both Mr. Gibbons and Mr. D'Angelo every day. (*Id.* ¶ 30; Pl.'s Opp'n 56.1 Statement ¶¶ 101–02.) In one of those conversations, Plaintiff requested to return to her old office with the golf course view, but she was informed that Ms. Bellone denied the request. (Pl.'s Opp'n 56.1 Statement ¶ 105.) Plaintiff indicated to Mr. Gibbons and Mr. D'Angelo that she was going to resign from her position. (*Id.* ¶¶ 103–04.) When she did so, Mr. Gibbons and Mr. D'Angelo informed Plaintiff that they were still working to either have a window installed in her office or have her moved to another office. (*Id.*) According to Defendants, Mr. Gibbons asked her to reconsider resigning and reminded her about the option to transfer. (*Id.* ¶¶ 122–23.)

On June 1, 2011, Plaintiff submitted a letter to Mr. Gibbons and Mr. D'Angelo requesting a three-month leave of absence without pay. (*Id.* ¶ 82.) In the letter, she indicated that she was making the request "due to health issues." (Weiss Affirmation, Ex. H, ECF No. 53-4.) That same day, Defendants denied her request. (Weiss Affirmation, Ex. I, ECF No. 53-4.) Defendants provided two reasons for the denial. *First*, it was "Department policy NOT to approve any request for leave of absence." (*Id.*) *Second*, "the Department [was] too short staffed to consider such a request." (*Id.*) From the record, it appears as if Plaintiff did not appeal the denial of leave to the Director of Labor Relations, as per the collective bargaining agreement. (Pl.'s Opp'n 56.1 Statement ¶ 92.)

On June 2, 2011, Plaintiff sent a letter to Defendants resigning her position. (Defs.' Opp'n 56.1 Statement ¶ 35.) She stated: "This is due to working conditions that exasperated my health condition, and I regret that a reasonable accommodation could not be provided." (*Id.*) After Plaintiff's resignation, Dr. Anna Mirski gave Plaintiff a note dated June 13, 2011, stating: "Donna has been under my care. She is able to work, but needs to avoid conditions that trigger her claustrophobia." (Weiss Affirmation, Ex. K, ECF No. 53-4.)

Prior to 2011, Plaintiff never had a claustrophobic feeling at work. (Pl.'s Opp'n 56.1 Statement ¶ 33.) Furthermore, in 2011, the manifestations of Plaintiff's claustrophobia at work were limited to her new office space. (*Id.* ¶¶ 126–27.) Outside of work, claustrophobia did not affect any life activity during the relevant period. (*Id.* ¶ 127.) Plaintiff had not been treated for claustrophobia as an adult prior to March 2011. (*Id.* ¶ 67.)

On December 14, 2011, Plaintiff filed a Charge of Disability under the ADA with the U.S. Equal Employment and Opportunity Commission ("EEOC"). (Defs.' Opp'n 56.1 Statement ¶ 1.) On the intake questionnaire, Plaintiff indicated that she "suffered from the medical disability of claustrophobia, that she requested reasonable accommodations, which were denied by [Defendants], and that [her] employment was constructively terminated." (*Id.*) On December 18, 2012, the EEOC issued Plaintiff a Notice of the Right to Sue. (*Id.* ¶ 2.) On February 11, 2014, Plaintiff filed the instant action. (*Id.*)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson*, 477 U.S. at 248.  The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330–31 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).  Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim.  *Celotex Corp.*, 477 U.S. at 325.

Once the movants meet their initial burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).  The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts.  *Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 165 (E.D.N.Y. 2010) (citing *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996)).  That is, the non-movant cannot survive summary judgment merely by relying on the same conclusory allegations set forth in her complaint.  *See Murphy v. Lajaunie*, No. 13-CV-6503, 2016 WL 1192689, at *2 (S.D.N.Y. Mar. 22, 2016) (citing *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)).

**DISCUSSION**

Congress enacted the ADA, in part, "to address the major areas of discrimination faced day-to-day by people with disabilities."  42 U.S.C.A. § 12101(b)(4).  Within the workplace, the "ADA prohibits discrimination against an otherwise qualified employee on the basis of her disability."  *Goonan v. Fed. Reserve Bank of N.Y.*, No. 12-CV-3859 JPO, 2014 WL 3610990, at *4 (S.D.N.Y. July 22, 2014).  Specifically, the ADA states that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to … advancement,

6

or discharge of employees, … and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

"ADA employment discrimination claims are subject to the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015) (internal quotation marks omitted). The *McDonnell Douglas* framework entails a three-part analysis, under which a plaintiff must first "establish a prima facie case."[2] *Id.* Next, the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the alleged unlawful conduct. *Id.* Then, the plaintiff must ultimately "produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Id.*

Plaintiff maintains that Defendants committed two violations of the ADA. *First*, she alleges that Defendants failed to reasonably accommodate her "known mental limitations brought on by her disability of claustrophobia." (Amended Complaint ¶ 21, ECF No. 9.) *Second*, Plaintiff alleges that Defendants constructively terminated her because of her medical disability, perceived medical disability, record of impairment, and need for leave as well as other reasonable accommodations. (*Id.* ¶ 25.)

To establish both a failure to accommodate and discrimination under the ADA, a plaintiff must demonstrate that she is a person with a disability as defined by the act. *See McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013). Here, Plaintiff maintains that she

---

[2] With regard to a failure-to-accommodate claim, a plaintiff establishes a prima facie case by demonstrating that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan,* 711 F.3d at 125–26. With regard to a discriminatory termination claim, a plaintiff establishes a prima facie case by demonstrating that: "(1) [h]er employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of [her] disability." (*Id.*)

7

suffers from "claustrophobia and/or agoraphobia." (Pl.'s SJ Brief at 7, ECF No. 53-5.) Defendants argue that Plaintiff's claims are defeated as matter of law because claustrophobia and agoraphobia are not recognized as impairments under the ADA. (Defs.' Opp. and SJ Brief at 13–14, ECF No. 54-17.) This is simply not the case. Even, the cases cited by Defendants make clear that there is no blanket rule regarding claustrophobia and agoraphobia. In *Rodriguez v. City of New York*, for example, the court noted that the "Second Circuit has not yet ruled on whether claustrophobia is a condition that constitutes a disability under the ADA" and made "an individualized determination of the factual record." 644 F. Supp. 2d 168, 195–96 (E.D.N.Y. 2008). In addition, in *Lanterman v. Columbia Gas of Ohio*, the court expressly "decline[d] to make a blanket statement that claustrophobia is not a disability under the ADA." No. 01-CO-54, 2002 WL 31169030, at *4 (Ohio Ct. App. Sept. 27, 2002)). With respect to agoraphobia, in *Reeves v. Johnson Controls World Servs., Inc.*, the Second Circuit noted, "[t]he parties do not appear to dispute, and we see no reason to question, that Panic Disorder With Agoraphobia constitutes a 'mental impairment' for purposes of the ADA." 140 F.3d 144, 150 (2d Cir. 1998).

Rather than the categorical 'bright-line" test approach urged by Defendants, the Court must make a fact-specific inquiry to assess the purported impairment. *See Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 (2d Cir. 2014) ("To read *Colwell* more broadly to state a categorical rule would conflict with our precedent in other ADA cases, in which we have rejected bright-line tests and instead emphasized the need for a fact-specific inquiry."). A plaintiff can establish that she is a person with a disability by showing either that she: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) has been regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)-(C).

Plaintiff does not argue that there was a record of her purported impairment or that she has been regarded as having such an impairment. Instead, Plaintiff maintains that her diagnosed disorders substantially limit one or more major life activities bringing her within the ambit of the ADA.³ (Pl.'s SJ Brief at 7.) The record does not support this contention.

Plaintiff relies almost exclusively on her own deposition testimony and testimony given at her 50-h hearing as evidence that her alleged impairment substantially limits major life activities. According to that testimony, Plaintiff's panic attacks and feelings of suffocation hindered her at the office. (Pl.'s Opp'n 56.1 Statement ¶ 81.) In order to keep up with her work, she had to work in the offices of Mr. Gibbons and Mr. D'Angelo when they were not present. (*Id.* ¶¶ 73–74, 80–81, 94, 99.) Other days, Plaintiff took sick leave or left work early. (Weiss Deposition 37:10–11.)

Absent from the record, however, is any admissible medical evidence that might serve to substantiate Plaintiff's claimed limitations. Plaintiff does not offer a single affidavit or deposition testimony from a physician or other medical professional setting out the limitations attendant to her diagnosis. There are no medical notes or records delineating the severity or extent of Plaintiff's limitations. Likewise, Plaintiff offers no expert medical opinion.⁴ Plaintiff offers only two notes relevant to the Court's inquiry,⁵ one from Dr. Mirski and the other from RCSW Weitz diagnosing Plaintiff with claustrophobia and agoraphobia, respectively. (Weiss

---

³ Specifically, she alleges that her ability to concentrate, think, communicate, interact with others, and work was substantially limited by her disability. (Amended Complaint, ¶ 8, ECF No. 9.)

⁴ Plaintiff has also proffered pages from the website WebMD as some sort of purported evidence concerning her disorder. (Ginsberg Affirmation, Ex. J, ECF No. 53-3.) This "evidence" is patent hearsay and will not be considered.

⁵ Plaintiff also proffered a note from Dr. Guillermo A. San Roman, which states only, "Pt under our care, any questions please call." (Weiss Affirmation, Ex. J, ECF No. 53-4.) This note is not probative and will not be considered. *See Weiss v. Feigenbaum*, 558 F. Supp. 265, 269 n.1 (E.D.N.Y. 1982) (noting that summary judgment cannot be defeated by documents that "are not probative evidence of the existence or nonexistence of any factual issue").

Affirmation, Exs. E, K.) As a threshold mater, the Court is not altogether convinced that the content of the notes should not be deemed inadmissible hearsay and therefore improper for consideration on a motion for summary judgment. *See Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) ("As a general matter, it is correct that unsworn letters from physicians generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment."). Assuming for the sake of argument that the content of notes is admissible, the notes nonetheless fail to provide the medical evidence necessary to support Plaintiff's claims.

It is insufficient for a plaintiff to prove a disability on the basis of a diagnosis alone—that is, not every impairment is a disability. *See Capobianco*, 422 F.3d at 56 ("Not every impairment is a 'disability' within the meaning of the ADA."). To rise to the level of a cognizable disability a plaintiff must demonstrate that the diagnosed conditions substantially limit plaintiff in a major life activity. *Id.* ("[T]here are two requirements: the impairment must limit a major life activity and the limitation must be substantial."); *see also* 29 C.F.R. § 1630.2(j)(1)(ii) ("An impairment is within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.").

Neither of the notes proffered by Plaintiff address what limitations, if any, are marked by Plaintiff's disorders. Putting aside for the moment that Dr. Mirski's note was authored after Plaintiff left the employ of Parks and Recreation, the note fails to provide any information concerning the diagnosed condition. It reads in total: "Donna has been under my care. She is able to work, but needs to avoid conditions that trigger her claustrophobia." (Weiss Affirmation, Ex. K.) Likewise, the note from RCSW Weitz, states only generically that agoraphobia "is represented by extreme anxiety or panic attacks when these patients are faced with a feeling of

confinement, *i.e.*, small spaces, being in a crowd, being on a bridge or [in a] tunnel or on a train, etc." (Weiss Affirmation, Ex. G, ECF No. 53-4.) Neither note provides information concerning the frequency of any alleged panic attack by Plaintiff. And, there is no reference to the duration of any panic attacks. Most importantly, neither note provides any information concerning how the diagnosed condition impacts Plaintiff's ability to think, concentrate, communicate, or work. This lack of evidence is fatal to Plaintiff's claims. *See e.g.*, *Farina v. Branford Bd. of Educ.*, 458 F. App'x 13, 16 (2d Cir. 2011) ("Farina failed to offer medical evidence substantiating that limitation, much less any evidence concerning whether her alleged problems were 'any worse than is suffered by a large portion of the nation's adult population.' Without such evidence, she cannot establish disability within the meaning of the ADA."); *see also Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 88 (2d Cir. 2010) (affirming district court's decision to grant defendant's summary judgment motion on an ADA discrimination claim where, *inter alia*, "[t]he record contain[ed] no medical evidence other than a doctor's note clearing Ragusa to return to work following her surgery").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is DENIED. Defendants' cross-motion for summary judgment in its entirety is GRANTED. The Clerk of Court is directed to enter judgment and close this case.

Dated: Brooklyn, New York
      March 27, 2018                               SO ORDERED:

                                                                  /s/LDH

                                                    LaSHANN DeARCY HALL
                                                   United States District Judge